IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| THE G.W. VAN KEPPEL CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-CV-02236-JAR |
| | ) | |
| DOBBS IMPORTS, LLC, d/b/a HELI AMERICAS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff The G.W. Van Keppel Co. ("Van Keppel") originally filed this action against

Defendant Dobbs Imports, LLC, d/b/a Heli Americas ("Heli Americas"), in Wyandotte County,

Kansas, District Court.  Defendant removed the case to this Court on May 20, 2014.  Plaintiff

alleges breach of contract and violations of the Kansas Outdoor Power Equipment Act,[1] the

Missouri Dealer Buy-Back Statute,[2] and the Illinois Equipment Fair Dealership Law.[3]

Pending before the Court is Defendant's Motion to Stay Action and Compel Arbitration

(Doc. 9).  The motion is fully briefed and the Court is prepared to rule.  For the reasons stated in

detail below, the Court grants Defendant's motion and stays this case pending arbitration.

I.      **Background**

Defendant presents the following facts in its motion to compel arbitration.  Defendant, a

---

[1]K.S.A. §§ 16-1301–1312.

[2]Mo. Rev. Stat. § 407.855.

[3]815 Ill. Comp. Stat. 715/3.

Tennessee-based company, owns the exclusive right to sell and market certain products (the "Products") in particular areas of the United States.  On or about May 25, 2011, Defendant and Plaintiff entered into a dealer agreement giving Plaintiff a non-exclusive right to sell and market the Products in Kansas, Missouri, and Illinois.  The dealer agreement provides for arbitration of disputes in the following two paragraphs:

> 19.    Arbitration. Where the parties are unable to settle a controversy, claim or dispute arising out of, relating to or pertaining to this Agreement by mutual agreement, either Dobbs [Heli Americas] or Dealer [Van Keppel] may submit the controversy, claim or dispute to an arbitrator in Shelby County, Tennessee for prompt determination under the Commercial Arbitration Rules as defined by the American Arbitration Association.

> **20.    WAIVER OF JURY TRIAL.  DEALER HEREBY WAIVES ITS RIGHT TO JURY TRIAL, AND DECLARES THAT ITS SOLE REMEDY UNDER THIS AGREEMENT WILL BE ARBITRATION UNDER SECTION 19.**

In addition, Section 25(b) of the dealer agreement contains the following forum-selection clause:

> Each party agrees that any suit, action or proceeding with respect to or relating in any way to this agreement shall be brought solely in the courts of the State of Tennessee in Shelby County, or in the United States District Court for the Western District of Tennessee. Accordingly, each party submits irrevocably to the non-exclusive jurisdiction of each such court for the purpose of any such suit, action or proceeding and waives irrevocably any defense which it may have to the enforcement of this provision, whether based on the inconvenience of the forum or otherwise.

Plaintiff alleges that the dealer agreement terminated no later than March 11, 2014.  On and after that date, Plaintiff demanded that Defendant repurchase equipment and parts pursuant to its alleged obligations under the dealer agreement, the Kansas Outdoor Power Equipment

Dealer Act, and similar acts passed in Missouri and Illinois.  Defendant refused.  Plaintiff then filed suit in Wyandotte County, Kansas, District Court, asserting four counts against Defendant: one for breach of the dealer agreement and one each for violations of the Kansas, Missouri, and Illinois statutes.  Defendant removed this action and now seeks to enforce the arbitration provisions included in the dealer agreement.

## II.    Legal Standards

While the interpretation of contracts—including arbitration agreements—is generally a matter of state law, the Federal Arbitration Act ("FAA") imposes certain rules beyond those normally found in state contract law.[4]  The FAA applies to written arbitration agreements in any contract "evidencing a transaction involving commerce."[5]  Congress designed the FAA "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate"[6] and, by enacting the FAA, created "a liberal federal policy favoring arbitration agreements."[7]  Under the FAA, a court should compel arbitration if it finds that (1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of the agreement.[8]  When determining the scope of an arbitration agreement, "[d]oubts should be resolved in favor of coverage."[9]

---

[4]*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (citing *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629-30 (2009); *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

[5]9 U.S.C. § 2.

[6]*Volt Info. Scis., Inc.*, 489 U.S. at 478 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985)) (internal quotation marks omitted).

[7]*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[8]9 U.S.C. §§ 2–3.

[9]*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

But despite its liberal policy, the FAA does not require a party "to submit to arbitration any dispute which he has not agreed so to submit."[10]  Instead, it requires that courts enforce "agreements to arbitrate, like other contracts, in accordance with their terms."[11]  So if a generally applicable state contract defense invalidates an arbitration agreement, or if grounds exist at law or equity that would call for the revocation of any contract, courts must not compel arbitration under the agreement.[12]  Enforcing the agreement according to its terms "is fully consistent with the goals of the FAA, even if the result is that the arbitration is stayed where the Act would otherwise permit it to go forward" because by rigorously enforcing the agreement according to its terms, courts give "effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA."[13]

## III.    Discussion

The FAA requires a district court to compel arbitration if (1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the arbitration agreement's scope.[14]  Plaintiff contends the Court should not compel arbitration in this case because the parties never entered into a valid arbitration agreement.

### A.    Validity of the Arbitration Agreement

Plaintiff argues that the parties did not reach a valid agreement to arbitrate because the

---

[10]*Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003) (quoting *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)) (internal quotation marks omitted).

[11]*Volt Info. Scis., Inc.*, 489 U.S. at 478 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

[12]*See id*; *see also Perry v. Thomas*, 482 U.S. 483, 489, 492–93 n.9 (1987).

[13]*Volt Info. Scis., Inc.*, 489 U.S. at 478.

[14]9 U.S.C. §§ 2–3.

4

mandatory arbitration provision in Section 20 of the dealer agreement directly conflicts with two other contract provisions.  Specifically, Plaintiff claims that Section 19 makes arbitration optional, while Section 25(b) precludes arbitration altogether.  Thus, according to Plaintiff, the contract as a whole reveals no agreement on mandatory arbitration.  Defendant responds that the three contract provisions are not inconsistent and that the Court should therefore construe them in harmony with one another, preserving Section 20's  mandatory arbitration provision.

The Court must decide, as a threshold matter, the applicable law governing the interpretation of the dealer agreement.  The parties agree that the contract should be construed in accordance with Tennessee law.  They differ, however, on the applicability of the federal common law presumption in favor of arbitration.  Plaintiff contends that the "liberal federal policy favoring arbitration" raises a presumption of arbitrability only when evaluating the *scope* of an arbitration agreement—not when determining whether a valid arbitration agreement exists in the first place.  Defendant disagrees, citing several cases to support its argument that the presumption applies whenever a commercial contract contains an arbitration clause.

Case law supports Plaintiff's position.  Defendant relies primarily on the Tenth Circuit's statement in *ARW Exploration Corp. v. Aguirre*[15] that "if a contract contains an arbitration clause, a presumption of arbitrability arises."[16]  But in that case, as in the others Defendant cites, the existence of an arbitration agreement was assumed;[17] the court applied the presumption only

---

[15]45 F.3d 1455 (10th Cir. 1995).

[16]*Id.* at 1462.

[17]*See id.* at 1462; *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650–52 (1986); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Hicks v. Cadle Co.*, 355 F. App'x 186, 192-93 (10th Cir. 2009).

to determine whether a particular claim fell within the scope of an undisputedly valid agreement to arbitrate.[18]  Where the parties have disputed the existence of an arbitration agreement, by contrast, the Tenth Circuit has refused to apply the presumption: "[A]lthough the presence of an arbitration clause *generally* creates a presumption in favor of arbitration, 'this presumption disappears when the parties dispute the existence of a valid arbitration agreement.' "[19]  Here, Plaintiff contends that the dealer agreement as a whole does not reflect an agreement to arbitrate. The Court therefore may not presume a valid arbitration agreement exists, and will rely solely on Tennessee law to determine whether the dealer agreement contains an agreement to arbitrate.

      1.      The Dealer Agreement's Arbitration Provisions

Plaintiff first claims that Section 20 of the dealer agreement, requiring arbitration of all disputes, conflicts with Section 19's provision that the parties "*may* submit [a] controversy, claim or dispute to an arbitrator."[20]  Plaintiff argues that Section 19's permissive language creates an ambiguity as to whether the parties agreed on mandatory or merely optional arbitration.  And according to Plaintiff, Tennessee law compels the Court to construe that ambiguity strictly against the drafter.  Because Defendant drafted the dealer agreement, Plaintiff urges that Defendant may not enforce Section 20's mandatory arbitration provision against Plaintiff in this case.

---

[18]*See ARW Exploration Corp.*, 45 F.3d at 1462.

[19]*Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (emphasis added) (citations omitted) (quoting *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002)); *accord Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) ("Unlike the general presumption that a particular issue is arbitrable when the existence of an arbitration agreement is not in dispute, when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away.") (internal citations omitted) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995)).

[20]Doc. 15 at 1 (emphasis added).

Tennessee courts apparently have not addressed the precise issue Plaintiff raises. But as Plaintiff points out, Tennessee does apply the doctrine of *contra proferentum*, requiring ambiguities to be construed strictly against the drafter of a contract.[21] Courts may resort to that doctrine, however, only after applying other rules of construction.[22] Tennessee courts apply the rules of construction in the following order:

> First and most important is the primary rule that the intent of the parties must prevail. Second, the courts will construe the writing so as to avoid the conflict if possible. Third, if the provisions are so repugnant that they cannot stand together, the first shall be given effect and the latter rejected. Fourth, written or typewritten terms will control printed parts of an agreement where there is an apparent inconsistency. Fifth, doubtful language in a contract should be interpreted most strongly against the party who drew or prepared it. This last rule is to be applied, however, only where other rules of construction fail to give certainty to the written expression.[23]

Under Tennessee law, therefore, the Court must first attempt to interpret the contract "so as to avoid the conflict" before construing the contract strictly against Defendant.

Applying that principle to the contract provisions in this case, the Court finds that Sections 19 and 20 of the dealer agreement can be construed in harmony. Section 20 states that arbitration will be the parties' "sole remedy" under the dealer agreement. If a remedy is sought, then, Section 20 requires that remedy to be arbitration. Though Section 19's use of the term "may" indicates arbitration is permissive, that permissive language does not suggest that a

---

[21]*See Fuller v. Orkin Exterminating Co.*, 545 S.W.2d 103, 107 (Tenn. Ct. App. 1975).

[22]*See Chad Youth Enhancement Ctr., Inc. v. Colony Nat'l Ins. Co.*, 474 F. App'x 429, 433 (6th Cir. 2012) (citing *Crouch v. Shepard*, 44 Tenn. 383, 388 (1867)); *Coble Sys., Inc. v. Gifford Co.*, 627 S.W.2d 359, 363 (Tenn. Ct. App. 1981).

[23]*Coble Sys.*, 627 S.W.2d at 363 (citing *Crouch*, 44 Tenn. at 388) (citations omitted).

second remedy is available to the parties for the resolution of disputes.  Rather, as the Eighth

Circuit has observed,

> The obvious purpose of the "may" language is to give an aggrieved
> party the choice between arbitration *or the abandonment of its
> claim*.  The presence of this or similar language has not prevented
> the conclusion that a claim, if pressed, is compulsorily subject to
> arbitration.[24]

The "may" language, in other words, "should be construed to give either aggrieved party the

*option to require* arbitration."[25]  A contrary interpretation "would render the arbitration provision

meaningless for all practical purposes," since parties may always voluntarily submit to

arbitration.[26]  For that reason, every federal court to consider permissive language in an

arbitration clause, like the language contained in Section 19, has found that disputes must be

resolved, if at all, through arbitration.[27]  That interpretation is consistent with the plain meaning

of Section 20.  Thus, the Court finds that Sections 19 and 20 of the dealer agreement  are not

inconsistent provisions and that a claim arising under the dealer agreement, if pressed, must go

to arbitration.

   2.   The Dealer Agreement's Forum-Selection Clause

   Plaintiff next contends that the dealer agreement's arbitration provisions conflict with the

forum-selection clause in Section 25(b), providing that "any suit, action or proceeding" relating

---

[24]*Bonnot v. Cong. of Indep. Unions, Local No. 14*, 331 F.2d 355, 359 (8th Cir. 1964) (emphasis added) (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 565 (1960)).

[25]*Nemitz v. Norfolk & W. Ry. Co.*, 436 F.2d 841, 849 (6th Cir. 1971) (emphasis added).

[26]*Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 879 (4th Cir. 1996).

[27]*See*, e.g., *Moore v. Bhd. of Locomotive Eng'rs*, No. 99–1214–JTM, 2000 WL 882374, at *4 (D. Kan. June 16, 2000) (citing *Collins v. Burlington N. R.R.*, 867 F.2d 542, 544 (9th Cir. 1989); *Atkins v. Louisville & Nashville R.R.*, 819 F.2d 644, 649 (6th Cir. 1987); *Hoffman v. Mo. Pac. R.R.*, 806 F.2d 800, 801 (8th Cir. 1986); *Walsh v. United States*, 723 F.2d 570, 574 (7th Cir. 1983)).

to the dealer agreement "*shall be brought solely* in the courts of the State of Tennessee in Shelby County, or in the United States District Court for the Western District of Tennessee."[28]  Plaintiff claims that this conflict creates an ambiguity as to whether the parties agreed on mandatory arbitration or mandatory litigation of their disputes.  If any provision should trump the others, Plaintiff argues, Section 25(b) should prevail because it states that each party "waives irrevocably any defense which it may have to the enforcement of this provision."[29]  The arbitration provisions contain no such language.  Plaintiff also maintains that the ambiguity stemming from the conflict should be construed against Defendant as the drafter of the dealer agreement.  Defendant counters that the forum-selection clause, like Section 19's permissive arbitration language, is not inconsistent with mandatory arbitration of disputes.

Again, Tennessee courts have not considered whether a forum-selection clause like the one at issue here necessarily conflicts with a clause requiring disputes to be resolved through arbitration.  When interpreting a contract governed by Tennessee law, however, courts should "read the whole instrument and give effect to every part, if possible."[30]  The Court also bears in mind that contract provisions "should be construed in harmony with each other, if possible,"[31] before resorting to the rule that ambiguous language should be construed strictly against the drafter.[32]  In that vein, Defendant cites a number of cases purporting to show that arbitration and

---

[28]Doc. 15 at 2 (emphasis in original).

[29]*Id.* at 3.

[30]*Chad Youth Enhancement Ctr., Inc. v. Colony Nat'l Ins. Co.*, 474 F. App'x 429, 433 (6th Cir. 2012) (quoting *Allmand v. Pavletic*, 292 S.W.3d 618, 631 (Tenn. 2009)).

[31]*See Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 85 (Tenn. 2012) (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)).

[32]*See Coble Sys., Inc. v. Gifford Co.*, 627 S.W.2d 359, 363 (Tenn. Ct. App. 1981).

forum-selection clauses are complementary, not contradictory, provisions.

Several circuits have considered contract provisions like those presented in this case. The defendant in *Personal Security & Safety Systems Inc. v. Motorola Inc.*,[33] for example, asked the Fifth Circuit to harmonize an arbitration clause with a forum-selection clause providing that "any suit or proceeding brought [under the agreement] shall be subject to the exclusive jurisdiction of the courts located in Texas."[34]  The court found the forum-selection clause did not prevent arbitration; instead, the court gave effect to both the forum-selection and arbitration provisions.  The arbitration clause, the court held, applied to all arbitrable disputes, while the forum-selection clause covered "only those disputes that are not subject to arbitration—for example, a suit to challenge the validity or application of the arbitration clause or an action to enforce an arbitration award."[35]  The Second Circuit reached a similar conclusion in *Bank Julius Baer & Co. v. Waxfield Ltd.*,[36] finding a forum-selection clause to be "complementary to" an arbitration agreement.[37]  Relying on the Third Circuit's decision in *Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc.*,[38] the *Bank Julius Baer* court reasoned that "arbitration awards are not self enforceable.  They may only be enforced by a subsequent judicial action.  Thus, even if arbitration is completed, the forum selection clause would appear to dictate the

---

[33]297 F.3d 388 (5th Cir. 2002).

[34]*Id.* at 393, 395.

[35]*Id.* at 395–96.

[36]424 F.3d 278 (2d Cir. 2005).

[37]*Id.* at 284.

[38]819 F.2d 400 (3d Cir. 1987) (abrogated on other grounds by *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287 (1988)).

location of any action to enforce the award."[39]  The Fourth Circuit, in *UBS Financial Services, Inc. v. Carilion Clinic*,[40] likewise held that the presence of a forum-selection clause did not preclude arbitration.[41]

Courts have found forum-selection and arbitration clauses to conflict, however, where both clauses apply by their terms to the same types of claims.  The Second Circuit thus distinguished *Bank Julius Baer* in *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*.[42] There, the arbitration agreement provided that "any dispute" between the parties would be resolved through arbitration.  That provision directly conflicted with the forum-selection clause's parallel language that "any dispute" would be adjudicated by specified courts.  Because both the arbitration and forum-selection clauses applied to all "dispute[s]" between the parties, and because both clauses were mandatory, "neither [clause] admit[ted] the possibility of the other."[43] In *Bank Julius Baer*, by contrast, the arbitration clause covered any "dispute, controversy or claim" arising between the parties, while the forum-selection clause applied only to "any [a]ction."[44]  The clauses at issue in *Bank Julius Baer* were therefore similar to those contested in *Carilion Clinic*, *Personal Security*, and *Patten*, where the arbitration and forum-selection clauses could stand together without conflict.[45]

---

[39]*Bank Julius Baer*, 424 F.3d at 284 (quoting *Patten Secs. Corp.*, 819 F.2d at 407).

[40]706 F.3d 319 (4th Cir. 2013).

[41]*Id.* at 329–30.

[42]645 F.3d 522 (2d Cir. 2011).

[43]*Id.* at 525.

[44]*Bank Julius Baer*, 424 F.3d at 282.

[45]*See Carilion Clinic*, 706 F.3d at 323 n.1, 329 (finding arbitration clause applied to "dispute[s]," while forum-selection clause applied to "actions and proceedings"); *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393, 395 (5th Cir. 2002) (finding arbitration clause applied to "claims, demands, actions, disputes, [and]

The contract provisions at issue in this case are more similar to those in *Bank Julius Baer* than those in *Applied Energetics*.  Here, the arbitration provisions apply broadly to any "controversy, claim or dispute," while the forum-selection clause applies only to a "suit, action or proceeding."[46]  That difference in terminology suggests a difference in application.  As the Fourth Circuit notes in *Carilion Clinic*, "actions and proceedings" can be understood as terms of art referring only to proceedings that may be brought before a court, as opposed to an arbitrator.[47]  Likewise, Section 3 of the FAA suggests the definition of a "suit" is limited to a proceeding brought in court.[48]  The Court therefore reads the forum-selection clause in Section 25(b), governing any "suit, action or proceeding," to apply only to actions that are necessarily non-arbitrable, such as suits to enforce an arbitral award.[49]  All other events falling under the scope of Sections 19 and 20, governing any "controversy, claim or dispute," must go to arbitration.  By so construing the dealer agreement, the Court follows its mandate to "give effect to every part" of the contract[50] and to "avoid repugnancy between the [contract's] various provisions."[51]  Accordingly, the Court finds that the various contract provisions do not conflict

---

controversies," while forum-selection clause applied to "suit[s] or proceeding[s]"); *Patten Secs. Corp., Inc. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 402, 407 n.3 (3d Cir. 1987) (finding arbitration clause applied to "dispute[s]," while forum-selection clause applied to "controversies").

[46]Doc. 15 at 1–2.

[47]*Carilion Clinic*, 706 F.3d at 329-30 (pointing out that Fed. R. Civ. P. 1 refers to "all *civil actions and proceedings* in the United States district courts") (emphasis in original); *see also* BLACK'S LAW DICTIONARY 31 (8th ed. 2004) (defining "action" in the legal sense as "[a] civil or criminal *judicial* proceeding") (emphasis added).

[48]Federal Arbitration Act, 9 U.S.C. § 3 (allowing parties with a valid arbitration agreement to apply for a stay in "any suit or proceeding" that has been brought into any of the *courts of the United States*).

[49]*See Bank Julius Baer*, 424 F.3d at 285.

[50]*See Chad Youth Enhancement Ctr., Inc. v. Colony Nat'l Ins. Co.*, 474 F. App'x 429, 433 (6th Cir. 2012) (quoting *Allmand v. Pavletic*, 292 S.W.3d 618, 631 (Tenn. 2009)).

[51]*See Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 85 (Tenn. 2012).

and that a valid arbitration agreement exists between the parties.

> B.       *Scope of the Arbitration Agreement*

Having determined that a valid arbitration agreement exists, the Court must next decide whether the dispute before it falls within the arbitration agreement's scope.[52]  In doing so, the Court must apply a "strong presumption in favor of arbitrability."[53]  That presumption "applies with even greater force when . . . a broad arbitration clause is at issue."[54]  The clause at issue here—requiring arbitration of any "controversy, claim or dispute arising out of, relating to or pertaining to" the dealer agreement[55]—is a "broad" arbitration clause as the Tenth Circuit defines that term.[56]

Plaintiff does not contend its claims fall outside the scope of the dealer agreement's arbitration provisions.  In fact, Plaintiff alleges a breach of the dealer agreement itself—a claim that necessarily "aris[es] out of" the dealer agreement.  Plaintiff's other claims involve violations of the Kansas Outdoor Power Equipment Act, the Missouri Dealer Buy-Back Statute, and the Illinois Equipment Fair Dealership Law.  Defendant can violate those statutes only by terminating an existing contract with a retailer like Plaintiff.[57]  Because Plaintiff does not allege that it entered into any contract with Defendant other than the dealer agreement, the Court finds

---

[52]*See* 9 U.S.C. §§ 2–3.

[53]*P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

[54]*Id.* (quoting *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir. 1991)) (internal quotation marks omitted).

[55]Doc. 15 at 1.

[56]*See P & P Indus., Inc.*, 179 F.3d at 871 (finding a "broad" arbitration clause where the parties agreed to arbitrate "[a]ny controversy, claim, or breach *arising out of or relating to* this Agreement") (emphasis in original).

[57]*See* K.S.A. § 16-1303; Mo. Rev. Stat. § 407.855; 815 Ill. Comp. Stat. 715/3.

that Plaintiff's statutory claims "aris[e] out of" or "relat[e] to" the dealer agreement as well.  The Court thus concludes that Plaintiff's claims fall within the scope of a valid arbitration agreement.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Stay Action and Compel Arbitration (Doc. 9) is **granted**.  The Court stays all proceedings and orders the parties to proceed to arbitration in accordance with Section 19 of the dealer agreement. Defendant shall file a status report by March 15, 2015, advising whether this matter has been resolved or whether arbitration is still pending.

Dated: October 15, 2014

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE